IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 24-cv-01444-PAB-KAS

THOMAS ALLEN GRAY, individually and on behalf of all others similarly situated,

    Plaintiff,

v.

BIOGEN INC.,
CHRISTOPHER A. VIEHBACHER,
MICHAEL VOUNATSOS, and
MICHAEL R. MCDONNELL,

    Defendants.
_____

# ORDER

**ENTERED BY MAGISTRATE JUDGE KATHRYN A. STARNELLA**

This matter is before the Court on the **Notice of Motion and Motion of Frances Clarity Stokes for Appointment as Lead Plaintiff and Approval of Counsel; Memorandum of Points and Authorities in Support** [#7] (the "Motion"), filed by Frances Clarity Stokes ("Stokes"). No response has been filed, and the time in which to do so has passed, *see* D.C.COLO.LCivR 7.1(d), and therefore the Motion [#7] stands unopposed. *See Notice* [#18]. For the reasons that follow, the Motion [#7] is **GRANTED**.

## I. Background

This is a securities class action in which Defendant Biogen Inc. and certain of its officers are alleged to have defrauded investors in violation of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder. *Compl.* [#1] ¶ 1. Defendant Biogen Inc. "is a global biopharmaceutical company that discovers, develops, and delivers therapies for people living with serious and complex diseases

worldwide." *Id.* ¶ 2. The Complaint [#1] alleges that, from February 3, 2022, through February 13, 2024, (the "Class Period"), Defendants "made false and/or misleading statements and/or failed to disclose" that:

> (i) Biogen had overstated its efforts to enhance its transparency, corporate governance, and compliance controls and procedures, as well as the efficacy of those controls and procedures;
>
> (ii) accordingly, Biogen maintained inadequate compliance controls and procedures in connection with its business operations in foreign countries;
>
> (iii) Biogen and/or its employees were engaged in unlawful or otherwise improper conduct in several foreign countries;
>
> (iv) the foregoing subjected the Company to a heightened risk of governmental and/or regulatory scrutiny and enforcement action, as well as significant legal, financial, and reputational harm;
>
> (v) Biogen overstated the strength of its AD-related [i.e., Alzheimer's disease] product portfolio, including the Company's and Eisai's efforts and success in launching and providing access to Leqembi;
>
> (vi) Biogen also downplayed the negative impact that the Reata Acquisition would have on its FY 2023 non-GAAP [i.e., generally accepted accounting principles] diluted EPS [i.e., earnings-per share];
>
> (vii) all the foregoing were likely to have a significant negative impact on Biogen's 2023 results; and
>
> (viii) as a result, the Company's public statements were materially false and misleading at all relevant times.

*Id.* ¶¶ 1, 10.

The present Motion [#7] was filed within the statutory framework of the Private Securities Litigation Reform Act of 1995 (the "PSLRA"). *Motion* [#7] at 5-6. The PSRLA requires all motions seeking appointment of Lead Plaintiff to be filed within sixty days of the publication of the notice of pendency of the action. 15 U.S.C. § 78u-4(a)(3)(A). That deadline was July 22, 2024, and the present Motion [#7] was the only motion filed.

2

## II. Analysis

The PSLRA provides the procedure for appointing a lead plaintiff in "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a). Thereunder, the Court must appoint the "most adequate plaintiff" to serve as Lead Plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(i).

The PSLRA creates a rebuttable presumption that the most adequate plaintiff is the movant who (1) files the complaint or a motion for appointment of lead counsel, (2) "has the largest financial interest in the relief sought by the class," and (3) "otherwise satisfies the requirements" of Fed. R. Civ. P. 23. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa)-(cc). Here, Ms. Stokes' uncontested Motion [#7] asserts that she incurred a loss of approximately $12,645 on her investments in shares of the Biogen stock, which is at issue in this lawsuit. *Motion* [#7] at 11. The docket contains no indication that any other class member has incurred a larger financial interest.

Regarding the third element, the movant need only make a "preliminary showing" that she satisfies the typicality and adequacy requirements of Rule 23. *In re Molson Coors Brewing Co. Sec. Litig.*, Nos. 19-cv-00455-DME-MEH, 19-cv-00514-DME-MEH, 2019 WL 10301639, at *3 (D. Colo. Oct. 3, 2019). Here, the Court finds that Ms. Stokes satisfies these requirements. First, Ms. Stokes' claims are typical because, like other members of the Class, she alleges that "Defendants violated the Exchange Act by making what they knew or should have known were false or misleading statements of material facts concerning Biogen, or by omitting to state material facts necessary to make the statements they did make not misleading," and that she "purchased Biogen securities

3

during the Class Period at prices alleged to have been artificially inflated by Defendants' misrepresentations or omissions, and was damaged upon the disclosure of those misrepresentations and/or omissions that drove Biogen's share price downward." *Motion* [#7] at 12-13; *see generally Compl.* [#1]; *see Ellis v. Spectranetics Corp.*, No. 15-cv-01857-KLM, 2015 WL 9259928, at *2 (D. Colo. Dec. 18, 2015) (finding typicality requirement met where, "like all of the members of the Class, [the movant] purchased [securities] during the Class Period at prices artificially inflated by Defendants' misrepresentations and omissions, and was damaged thereby" (internal quotation marks and citation omitted).

Second, the adequacy requirement is fulfilled by demonstrating that there is an "absence of potential conflict between the named plaintiff[ ] and the class members" and the "counsel chosen by the representative part[y] is qualified, experienced and able to vigorously conduct the proposed litigation." *In re Ribozyme Pharm., Inc. Sec. Litig.*, 192 F.R.D. 656, 659 (D. Colo. 2000). According to Ms. Stokes' Declaration [#8-4], she has a Master's Degree in Economics and is a retired banker and real estate investor who has been investing in the securities markets for about thirty-seven years. *See* [#8-4] ¶ 2. She demonstrates an understanding of her obligations if chosen as Lead Plaintiff. *Id.* ¶¶ 3-10. The docket contains no indication that Ms. Stokes has any conflict of interest with other Class members which would preclude her from being chosen as Lead Plaintiff. *See Motion* [#7] at 13. To overcome the rebuttable presumption that Ms. Stokes should be appointed as Lead Plaintiff, the PSLRA requires proof that she "will not fairly and adequately protect the interests of the class" or that she "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. §

4

78u-4(a)(3)(B)(iii)(II)(aa)-(bb). As noted, no opposition to the Motion [#7] has been filed, and therefore no such rebuttal evidence has been presented.

Ms. Stokes has chosen Pomerantz LLP and The Schall Law Firm to act as co-Lead Counsel on behalf of herself and the class. *Motion* [#7] at 13; *see* 15 U.S.C. § 78u-4(a)(3)(v) ("The most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class."). As discussed in the Motion [#7], Pomerantz LLP has extensive experience in securities litigation and class actions. *See Firm Resume of Pomerantz* [#8-5] at 2-23 (discussing, among other cases, a $3 billion recovery in *In re Petrobras Securities Litigation*, No. 14-cv-09662 (S.D.N.Y.), and a $225 million recovery in *In re Comverse Technology, Inc. Securities Litigation*, No. 1:06-cv-01825 (E.D.N.Y.)). The Schall Law Firm similarly has a history of handling securities litigation and class actions. *See Firm Resume of Schall* [#8-6] at 3, 5-7 (discussing, among other cases, a $187.5 million recovery in *Erickson v. Snap, Inc.*, No. 17-cv-03679 (C.D. Cal.)). Thus, Ms. Stokes' filings indicate that Pomerantz LLP and The Schall Law Firm are "qualified, experienced and able to vigorously conduct the proposed litigation." *Ribozyme Pharm.*, 192 F.R.D. at 658.

Accordingly, the Court finds that Ms. Stokes is the "most adequate plaintiff" and should be appointed Lead Counsel in this lawsuit, and that Pomerantz LLP and The Schall Law Firm are "qualified, experienced and able to vigorously conduct the proposed litigation" and should be approved as Lead Counsel in the case.

### III. Conclusion

Based upon the foregoing,

IT IS HEREBY **ORDERED** that the Motion [#7] is **GRANTED**. Frances Clarity Stokes is **APPOINTED** as Lead Plaintiff in this case, and her selection of Pomerantz LLP and The Schall Law Firm as Lead Counsel for the Class is **APPROVED**.

Dated: September 4, 2024

BY THE COURT:

Kathryn A. Starnella
United States Magistrate Judge